# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| **DANIEL KEITH MATTHEWS,** | ) |
| Petitioner, | ) |
| | ) CIVIL NO. 12-12 |
| v. | ) CRIMINAL NO. 03-072 |
| | ) |
| **UNITED STATES OF AMERICA,** | ) |
| Respondent. | ) |

## MEMORANDUM OPINION AND ORDER

**CONTI, District Judge**

Pending before the court is a motion to vacate, set aside, or correct sentence by a person in federal custody pursuant to 28 U.S.C. § 2255 (ECF No. 953) filed by petitioner Daniel Keith Matthews[1] ("Matthews" or "petitioner"). In a memorandum opinion dated August 27, 2012, the court denied petitioner's motion to vacate, set aside, or correct sentence by a person in federal custody in all respects except for the claim that petitioner's trial counsel, Martha Bailor ("Bailor"), was ineffective because she failed to advise him that if the government filed prior to trial a notice of his prior drug conviction pursuant to 21 U.S.C. § 851 (the "851 information"), he faced a mandatory minimum term of imprisonment of 120 months. (ECF No. 1021 at 11-10.) A ruling on the sole remaining issue raised by petitioner's motion was reserved until after a hearing was held. (Id.)

---

[1] The court notes that in petitioner's filings with the court, he spells his name "Mathews." (See e.g. ECF No. 782.) On the court's electronic filing system, petitioner's name is spelled "Matthews." For the sake of consistency with the electronic filing system and the court's previous filings in this case, the court refers to petitioner as "Matthews."

On December 18, 2012, the court held a hearing with respect to the remaining issue raised by petitioner's motion. Bailor was deceased at the time of the hearing, and thus, the record could not reflect her recollection of the events in issue. Petitioner, however, testified about those events. Given that situation, the court found that Bailor's failure to inform petitioner about the implications of the government's filing a § 851 information was deficient representation. (H.T. 12/18/12 (ECF No. 1067) at 99, 101.) The court deferred ruling on whether Bailor's deficient representation prejudiced petitioner until after the parties submitted supplemental briefs addressing the issue. (Id. at 101.)

After reviewing petitioner's motion to vacate, set aside, or correct sentence by a person in federal custody, the government's brief in opposition (ECF No. 970), the evidence presented at the hearing, and the supplemental briefs submitted by the parties (ECF Nos. 1062, 1063), the court will deny petitioner's motion because he did not establish prejudice.

## I.    Background

On August 5, 2004, in a superseding indictment, Matthews, Larry Lewis Ferguson ("Ferguson"), Michelle Harris ("Harris"), John C. Steele ("Steele"), Roscoe B. Thompson ("Thompson"), and others were jointly charged in count one with conspiracy to possess and distribute more than 100 grams of a mixture or substance containing a detectable amount of heroin from November 20, 2002 to February 8, 2003, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(B)(i). (ECF No. 354.) Petitioner was also separately charged in count sixteen with possession with intent to distribute and distribution of a quantity of heroin on or about January 11, 2003, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C). Id. While ten of petitioner's co-defendants, including Harris and Steele, chose to cooperate and pleaded guilty to the

2

conspiracy count, petitioner, Ferguson and Thompson went to trial before a jury on the counts in which they were charged. (ECF No. 970 at 2.)

On May 2, 2005, prior to jury selection, the government filed the § 851 information with respect to petitioner. By reason of that filing, the previous state drug conviction would be used, if he was convicted of the pending charges against him, to increase the statutory mandatory minimum term of imprisonment from five years to ten years. (ECF No. 456.) The initial trial, which began on May 10, 2005, ended in a mistrial due to juror misconduct, (see ECF No. 492), and all three defendants were retried beginning on January 12, 2006.

On March 2, 2006, after all the evidence was presented, the jury found petitioner guilty of count sixteen and all three defendants guilty of count one. (ECF No. 644.) Following the verdict, petitioner filed pro se Rule 29 and Rule 33 motions, which were denied by the court as untimely on September 8, 2006. (ECF No. 778.) Petitioner's sentencing was scheduled for September 29, 2006. Id. After September 8, 2006 and prior to sentencing, petitioner requested new counsel to replace Bailor. (ECF No. 782.) On September 18, 2006, Bailor filed a motion for leave to withdraw as counsel. (ECF No. 784.) The court held a hearing with respect to petitioner's motion for new counsel and Bailor's motion to withdraw as counsel. The court granted both motions. On October 2, 2005, Sally A. Frick ("Frick") was appointed as petitioner's counsel. (ECF No. 797.) Frick prepared the defendant's Position with Respect to Presentence Investigation Report, which she filed on January 5, 2007. (See ECF No. 862.) Petitioner continued to file numerous pro se motions with the court. (See ECF Nos. 809, 843, 849, 855, 856, 860, and 861.) Each pro se motion was denied without prejudice by the court because he was represented by Frick, who, among other things, could address the matters raised by filing motions on his behalf or raising arguments at the sentencing hearing set for January 17, 2007.

3

(ECF No. 866.) On that date, the court sentenced petitioner to 120 months of imprisonment to be followed by eight years of supervised release. (See ECF No. 867.) The sentence was the statutory minimum sentence for a violation of 21 U.S.C. § 841(b)(1)(B) because prior to trial the government filed the § 851 information providing the court notice of petitioner's prior felony drug offense. (ECF No. 970 at 4.)  The mandatory minimum term of imprisonment was greater than the range which would have been determined under the federal sentencing guidelines had the government not filed the § 851 information. The lower guidelines range of imprisonment was 70 to 87 months based upon petitioner's base offense level and criminal history category without taking into consideration the filing of the § 851 information. (See id.)

Petitioner appealed his conviction, arguing, among other things, that the evidence was insufficient to support his conviction for participation in the heroin conspiracy. United States v. Ferguson, 394 F. App'x 873, 878 (3d Cir. 2010). In an opinion issued on September 21, 2010, the Court of Appeals for the Third Circuit affirmed the conviction, finding that the "evidence presented at trial was more than sufficient to permit a rational trier of fact to conclude that Petitioner shared a unity of purpose with the other conspirators to distribute heroin and entered into an agreement to further that objective." Id. at 878.

Petitioner continued to file motions pro se (see ECF Nos. 893, 923, 937, 938, and 945), the last of which was filed on December 1, 2010 to "vacate, set aside or correct the sentence" pursuant to 28 U.S.C. § 2255.  Because "Matthews [sic] might not have been aware of the potential legal consequences when he filed the Motion to Vacate, the Motion for Trial, Supplement and Amended Motion," this court delayed consideration of his motions and provided him with the option, among others, to withdraw the motion and file an inclusive § 2255 motion. (ECF No. 946); see United States v. Miller, 197 F.3d 644, 652 (3d Cir. 1999). Petitioner

4

withdrew the previous motions, (see ECF No. 952), and filed one all-inclusive § 2255 petition on December 27, 2010. (ECF No. 953).  This motion was supplemented three days later with a Motion for New Trial and a Motion for Sentencing Transcripts and DEA Surveillance Reports. (ECF No. 954.)

In an order dated August 27, 2012, the court denied in part petitioner's motion to vacate, set aside, or correct sentence by a person in federal custody, reserving decision with respect to whether Bailor was ineffective for failing to advise petitioner that if the government filed prior to trial a notice of his prior drug conviction, he faced a mandatory minimum term of imprisonment of 120 months.[2] (ECF No. 1021 at 11-10.) Petitioner was appointed counsel to represent him in connection with his motion. (Id. at 25.)

On December 18, 2012, the court held an evidentiary hearing with respect to the remaining issue raised by petitioner's motion. Petitioner, Assistant United States Attorney Troy Rivetti ("Rivetti"), and Frick testified. The government and petitioner each entered exhibits into evidence. As noted, the testimony of petitioner could not be contradicted by Bailor during the hearing on December 18, 2012 because Bailor had died prior to the hearing. The court on the basis of the record found that Bailor's performance was deficient because she did not inform petitioner about the impact the filing of the § 851 information could have on his ultimate sentence. (H.T. 12/18/12 (ECF No. 1067) at 99, 101.) The parties were ordered to file supplemental briefs with respect to whether petitioner was prejudiced by Bailor's deficient representation. On January 3, 2013, the parties each filed a supplemental brief with the court.

---

[2] In the same order dated August 27, 2012, the court denied petitioner's Motion for New Trial and Motion for Sentencing Transcripts and DEA Surveillance Reports. (ECF No. 1021 at 24-25.)

Based upon the foregoing, the sole remaining issue for the court to decide is whether petitioner was prejudiced by Bailor's deficient representation.

On this 12th day of April 2013, the court makes the following findings of fact and conclusions of law with respect to whether petitioner was prejudiced by Bailor's ineffective assistance of counsel.

## II.  <u>Standard of Review</u>

A district court is required to hold an evidentiary hearing on a motion to vacate sentence filed pursuant to § 2255 unless the motion, files, and records of the case show conclusively that the movant is not entitled to relief.  28 U.S.C. § 2255 ("Unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall . . . grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto."); <u>United States v. Booth</u>, 432 F.3d 542, 545-46 (3d Cir. 2005).  An evidentiary hearing is not required, however, if the court determines that the motion, files, and records of the case conclusively support that the motion should be denied as a matter of law.  <u>Id.</u> With this in mind, the "district court must 'accept the truth of the movant's factual allegations unless they are clearly frivolous on the basis of the existing record.'" <u>Johnson v. United States</u>, 294 F. App'x 709, 710 (3d Cir. 2008) (quoting <u>United States v. Thomas</u>, 221 F.3d 430, 437 (3d Cir. 2000)).  The district court, however, without further investigation may dispose of "vague and conclusory allegations contained in a § 2255 petition." <u>Id.</u>

Under § 2255, a federal prisoner in custody may move the court which imposed the sentence to vacate, set aside or correct the sentence

> upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose

6

such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack.

28 U.S.C. § 2255(a).  In Hill v. United States, 368 U.S. 424 (1962), the Supreme Court of the United States read the statute as stating four grounds upon which relief can be claimed:

> (1) "that the sentence was imposed in violation of the Constitution or laws of the United States," (2) "that the court was without jurisdiction to impose such sentence," (3) "that the sentence was in excess of the maximum authorized by law," and (4) that the sentence "is otherwise subject to collateral attack."

Id. at 426-27 (quoting 28 U.S.C. § 2255(a)).

The statute provides as a remedy for a sentence imposed in violation of law that "the court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate."  28 U.S.C. § 2255(b). For this remedy to be appropriate for a claim of ineffective assistance of counsel, there must be a "showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment." Strickland v. Washington, 466 U.S. 668, 687 (1984).

The burden is on the petitioner to establish such a claim and requires a petitioner to prove: (1) deficient representation, meaning that counsel's representation fell below an objective standard of reasonableness, and (2) prejudice, meaning there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  Id. at 687, 694.

**III.   Findings of Fact**

1.    Petitioner's initial appearance on the charges contained in the indictment was February 20, 2003. (H.T. 12/18/12 (ECF No. 1067) at 20-21; ECF No. 8.)

7

2.      Bailor first met with petitioner with respect to those charges while he was incarcerated prior to his arraignment, which took place on February 27, 2003. (H.T. 12/18/12 (ECF No. 1067) at 21.) During that meeting, Bailor gave petitioner a business card that listed her telephone number and fax number. (Id. at 5.) The card did not contain her business address. (Id.)

3.      On March 3, 2003, petitioner was released from custody and placed on house arrest. (ECF No. 61; H.T. 12/18/12 (ECF No. 1067) at 15.)

4.      A superseding indictment was filed in this case on August 5, 2004. (Id. at 21. ECF No. 354.) Bailor represented petitioner at the arraignment on the charges contained in the superseding indictment, which took place on August 26, 2004. (H.T. 12/18/12 (ECF No. 1067) at 22.)

5.      At the initial appearance on February 20, 2003, the arraignment on February 27, 2003, and the arraignment on August 26, 2004, Rivetti, the prosecutor assigned to petitioner's case, in open court explained the possible penalties petitioner was facing with respect to the charges filed against him. (Id. at 52.) Rivetti's explanation of penalties included the penalties for a first-time offender and the penalties for a defendant with a prior felony drug conviction, which included the increase in the statutory mandatory minimum term of imprisonment from five years to ten years if defendant had a prior felony drug conviction. (Id. 52-53.) Rivetti testified that at an arraignment, magistrate judges in the Western District of Pennsylvania, where petitioner was arraigned, require an explanation of the possible penalties a defendant faces and that the possible penalties are also set forth in an indictment memorandum filed with the court. (Id. at 53.)

6.      Rivetti testified that there was no indication that petitioner was confused about the possible penalties he faced if convicted of the charges filed against him in this case. (Id. at 56.)

7.      On November 17, 2004, Rivetti sent a letter to Bailor and counsel for five other defendants who were indicted with petitioner. (Gov't Ex. 1; H.T. 12/18/12 (ECF No. 1067) at 36.) The letter provided, among other things:

> Finally, we remain open to the possibility of resolving this case by means of a plea agreement. Due to the various pretrial deadlines set forth in the Court's November 10, 2004 Case Management Order, we are setting Tuesday, December 7, 2004, as the deadline for reaching a plea agreement with our office. Thereafter, we will be completing our trial preparation.

(Gov't Ex. 1; H.T. 12/18/12 (ECF No. 1067) at 48-49.) In response to this letter, Rivetti and Bailor spoke on the telephone. (H.T. 12/18/12 (ECF No. 1067) at 60.) Bailor told Rivetti that petitioner was adamant that he was innocent, was not interested in a plea agreement, and was going to trial. (Id. at 61-62.)

8.      Rivetti spoke with Bailor at least five times between petitioner's arraignment on August 26, 2004 and the start of the first jury trial on May 9, 2005. (H.T. 12/18/12 (ECF No. 1067) at 50.) Rivetti and Bailor discussed, among other things, the evidence the government had against petitioner and the possibility of a plea agreement between petitioner and the government. (Id.) Bailor told Rivetti that petitioner was adamant that he was not guilty of the charges contained in the superseding indictment and that he was going to trial. (Id. at 52.) Rivetti testified that Bailor told him she discussed with petitioner the possibility of enhanced penalties due to his prior drug conviction. (Id.) Rivetti and Bailor never discussed the terms of a possible plea agreement, such as the government agreeing not to file a § 851 information and stipulations with respect to drug quantity and petitioner's role in the offense, because according to Bailor, petitioner was adamant he was not guilty. (Id. at 53-54.) Rivetti did not take notes with respect to his conversations with Bailor about petitioner because it was not his practice to take notes if he learned that a defendant did not intend to change his plea to guilty. (Id. at 58-59.)

9

9.      Rivetti prosecuted cases against defendants represented by Bailor prior to and following petitioner's case. (H.T. 12/18/12 (ECF No. 1067) at 51.) Petitioner's case was the only case in which Rivetti was the prosecutor and Bailor was the defense counsel that proceeded to trial. (Id.) All the other cases ended in plea agreements between the government and the defendants represented by Bailor. (Id.)

10.     From the time of arraignment on August 26, 2004 and the start of the first jury trial on May 9, 2005, petitioner called Bailor on the telephone, left her voicemails, and sent her faxes. (H.T. 12/18/12 (ECF No. 1067) at 5-6.) Although Bailor had petitioner's mailing address, she did not send him correspondence during this time period. (Id. at 6.)

11.     Bailor met with petitioner one time to discuss his case between the arraignment on August 26, 2004 and the start of the first jury trial on May 9, 2005. (H.T. 12/18/12 (ECF No. 1067) at 3.) This in-person meeting occurred on a Sunday close to the Easter holiday in 2005 (the "Sunday meeting"). (Id. at 7.) Bailor called petitioner that morning and told him to meet her in an office building on Fifth Avenue in Pittsburgh, Pennsylvania. (Id. at 7-8.)

12.     Prior to the meeting, petitioner did not know much about his case or the evidence the government had against him. (H.T. 12/18/12 (ECF No. 1067) at 9.) Bailor and petitioner talked about case strategy during the meeting. (Id. at 22.) Petitioner told Bailor he was innocent of the charges against him, but testified that at that meeting, he asked her to look into the possibility of obtaining a plea deal from the government. (Id. at 9.) Bailor told petitioner that she did not respond to his telephone calls and faxes because her mentally challenged sister deleted his voicemails and there was no paper in her fax machine. (Id.) Bailor told petitioner that at a maximum, he was facing a term of imprisonment of five years and that he would be given credit for time spent on house arrest, meaning he would be incarcerated for eighteen months. (Id. at

15.) Petitioner testified that he did not know there was a potential difference in the sentence he would receive if he pleaded guilty as opposed to going to trial on the charges against him. (H.T. 12/18/12 (ECF No. 1067) at 16.) Petitioner testified that Bailor never informed him that there were plea negotiations or that there was an offer made by the government to enter into a plea agreement. (Id. at 32.)

13.      The Sunday meeting was the only time petitioner and Bailor met outside the courtroom to discuss his case. (H.T. 12/18/12 (ECF No. 1067) at 33.)

14.      Petitioner testified that at some point after the Sunday meeting, he telephoned Bailor because she was supposed to follow up with him with respect to the possibility of obtaining a plea deal from the government. (H.T. 12/18/12 (ECF No. 1067) at 12.)

15.      The next time petitioner heard from Bailor, she telephoned him to tell him he needed to attend a hearing that day at the federal courthouse in Pittsburgh, Pennsylvania. (Id. at 12-13.) When petitioner arrived at the courthouse, Bailor escorted him into the building. (Id. at 13.) Following the conference, petitioner tried to speak with Bailor about his case, but she was in a hurry to attend a different court proceeding and petitioner had to return to work. (Id. at 14.) Bailor told petitioner she would "get back with [him]." (Id.)

16.      On May 2, 2005, twenty-seven months after the indictment was filed in this case, the government filed the § 851 information that identified petitioner's prior drug felony offense. (ECF No. 456.) Petitioner testified that he never received a copy of the § 851 information from Bailor and that she never discussed its consequences or application to his case. (H.T. 12/18/12 (ECF No. 1067) at 16.)

17.      Petitioner testified that the only information Bailor provided him with respect to his prior conviction was that the government could not use the prior conviction against him to

11

prove that he was a part of the conspiracy because it was unconstitutional and there was a conflict of interest.[3] (Id. at 17.)

     18.    The government filed a § 851 information for each of the three defendants named in the superseding indictment who went to trial, i.e., petitioner, Thompson, and Ferguson. (Id. at 47, 64.) The government did not file a § 851 information for the defendants named in the

---

[3] At the hearing on December 18, 2012, a letter dated May 3, 2006 allegedly written by Bailor to petitioner was entered into evidence. The letter provided, in pertinent part:

> I didn't file any post verdict motions because it would be a futile act. The real battle comes with the presentence report. I intend to take the position: 1. That your 1996 conviction was procured by fraud that it cannot be counted against you. 2. That youshould [sic] be given credit for the three years you spent on the bracelet.

(Def. Ex. A.) The letter was allegedly signed by Bailor. (Id.) At the hearing and after the letter was entered into evidence, the government questioned the letter's authenticity, i.e., whether it was written by Bailor or created by petitioner with a word processing program. (H.T. 12/18/12 (ECF No. 1067) at 66.) The government did not present an expert that called into question the authenticity of the signature on the letter. Petitioner did not have the original letter sent to him by Bailor because according to petitioner's counsel, when petitioner was transferred from a prison in Pennsylvania to a prison in Ohio, the Bureau of Prisons did not allow him to take his belongings, including the original letter, with him.

Following the hearing, the court compared Bailor's signature on the letter to her signature on documents previously filed with the court. Without the benefit of a handwriting expert, the court is unable to conclude whether the signature on the letter was forged. The first two signatures below are from documents Bailor filed with the court. (ECF Nos. 188, 475.) The third signature is from the letter dated May 3, 2006 that petitioner offered into evidence.

Respectfully submitted,      Respectfully submitted,      Very truly yours,

Martha E. Bailor      Martha E. Bailor      Martha E. Bailor

(ECF Nos. 188, 475; Def. Ex. A.)

indictment or superseding indictment that pleaded guilty and had prior felony drug convictions. (Id. at 45-47, 64.)

19.     Jury selection began for the first jury trial on May 9, 2005. The majority of the government's evidence with respect to petitioner being a knowing member of the charged conspiracy concerned his involvement and interactions with Michael Good ("Good")[4], who at the time in question in the superseding indictment was a drug dealer on the North Side of Pittsburgh, Pennsylvania, and Gary Sloan ("Sloan")[5], another member of the charged conspiracy.

20.     Petitioner testified on his own behalf during that trial. (T.T. 6/16/2005 (ECF No. 592) at 6.) Petitioner testified with fervency denying that he was involved in the distribution of heroin with Good and Sloan. His testimony directly contradicted the testimony of the other fact witnesses presented by the government. He testified that he was "just another customer" of Good, he did chores for Good to make money, and Good and Sloan did not engage in drug transactions in his house. (Id. at 42, 50, 118-19.) Petitioner testified that in 2003, Good dropped off a package at his house, but he did not know the contents of the package. (Id. at 51.) Petitioner testified that he hoped the package contained heroin so he could use it to alleviate the pain

---

[4] Good was charged in counts one, two, three, four, six, seven, nine, ten, twelve, thirteen, fifteen, and seventeen of the indictment in which petitioner, Ferguson, and Thompson were also charged. Good was not named in the superseding indictment because he pleaded guilty to counts one, six, and nine of the indictment prior to the filing of the superseding indictment. The remaining counts charged against him in the indictment were dismissed on motion by the government. (See ECF No. 230.)

[5] Sloan was charged in counts six, fourteen, and sixteen of the indictment in which petitioner, Ferguson, Thompson, and Good were also charged. Sloan, like Good, was not named in the superseding indictment because he pleaded guilty to count six of the indictment prior to the filing of the superseding indictment. Counts fourteen and sixteen were dismissed against him. (See ECF No. 235.)

caused by his toothache. (Id.) The package contained ten bundles of ten packets of heroin. (Id. at 101). Petitioner testified that he used some of the heroin to treat the pain caused by his toothache. (T.T. 6/16/2005 (ECF No. 592) at 104.) Petitioner testified that at some point after Good dropped off the package, Sloan showed up at petitioner's house. (Id. at 103.) Petitioner told the jury that Sloan knocked at his door, but he did not answer the door because he was getting high. (Id. at 106.) Petitioner testified that after that day, he began to use three to four bags of heroin per day. (Id. at 108.) A week and a half later, Good asked him about the package and was furious to learn that petitioner destroyed the remainder of the heroin when his fiancé washed the sock in which he had hidden the heroin in the washing machine. (Id. at 110.) Good and Sloan both testified that petitioner was holding the heroin for Good, was to supply it to Sloan, and that Sloan and Good engaged in drug transactions in petitioner's home.

21.     On June 30, 2005, the first jury trial ended in a mistrial due to juror misconduct. (ECF No. 492.)

22.     At the hearing on December 18, 2012, petitioner testified that prior to the court granting the motion for a mistrial and while the court was questioning the jurors with respect to the motion for a mistrial, he asked Bailor to see if she could obtain a plea agreement for him with the government. (H.T. 12/18/12 (ECF No. 1067) at 29.)

23.     There was no contact between petitioner and Bailor between the end of the first jury trial and the beginning of jury selection for the second trial. (Id. at 28.)

24.     Jury selection for the second trial began on January 9, 2006. Again, the government's evidence against petitioner concerned, among other things, his interaction and involvement with Good and Sloan. (T.T. 1/12/06 (ECF No. 740) at 34.) Petitioner testified on his own behalf during the trial. (T.T. 2/14/06 (ECF No. 753) at 161.) Again, petitioner testified with

fervency that he was not involved in the distribution of heroin with Good and Sloan, and his testimony contradicted the testimony of the government witnesses that testified against him. Petitioner testified that at the time period in issue, he was not friends with Good, he tried to stay away from him, Good never put him in charge of his drug business, and Good and Sloan did not engage in drug transactions at his house. (Id. at 193-200, 222, 234.) Again, petitioner testified that Good came to his house, gave him a package, and asked him to hold it for him. (Id. at 244-45.) Petitioner testified that he agreed to hold the package and give it back to Good. (Id. at 236) Petitioner told the jury that he eventually opened the package, saw it contained heroin, and began to use the heroin to treat the pain caused by his toothache. (Id. at 238-40.) Petitioner testified that later that day, Sloan came to his house and knocked on his door. (T.T. 2/14/06 (ECF No. 753.) at 243.) Petitioner testified that prior to that day, Sloan came to his house to do work for petitioner and his fiancé. (Id.) Petitioner testified that although he knew Sloan used heroin in the past, he did not know why Sloan showed up at his door that day and he did not answer the door. (Id. at 243.) Petitioner told the jury that the heroin in the package he received from Good was destroyed when his fiancé put a sock in which he had hidden the heroin in the washing machine, but he continued to purchase and use heroin from people other than Good until he was arrested in this case.[6] (Id. at 199.) Sloan testified in direct contradiction to petitioner's testimony. Sloan testified that Good entrusted petitioner with heroin to sell to him and that petitioner acted as an intermediary between Good and him. (T.T. 2/1/06 (ECF No. 745) at 39-43.) Sloan purchased

---

[6] Matthews never admitted to the court that he received the package of heroin from Good to sell to Sloan or permitted Good and Sloan to conduct drug transactions at his house. His submissions to the court are consistent with his testimony from the first and second jury trials, which if believed by the jury, could be sufficient to acquit him of the charges against him in the superseding indictment.

about two bricks of heroin from Good every day during the six-month period prior to his arrest. (T.T. 1/31/06 (ECF No. 744) at 180-82.) He went to the petitioner's house to obtain the heroin from petitioner between five to ten times. (Id. at 235.) Sloan would give money to petitioner and petitioner would give him heroin, usually one to two bricks. (Id. at 236.)

25.    On March 2, 2006, the jury found petitioner, Ferguson, and Thompson guilty of count one of the superseding indictment (conspiracy to distribute and possess with intent to distribute 100 grams or more of heroin) and petitioner guilty of count sixteen of the superseding indictment (distribution and possession with the intent to distribute a quantity of heroin on or about January 11, 2003). (ECF No. 645.)

26.    On March 17, 2006, petitioner filed a motion to arrest verdict and motion for new trial. (ECF No. 666.) In that motion, petitioner argued "the government did not meet its burden of proof" and "[t]here was insufficient evidence of conspiracy." (Id.) Petitioner argued: "Indeed even the purchase of drugs and knowledge of conspiracy does not always make a defendant a co-conspirator." (Id.) The court denied petitioner's motion as being untimely filed. (ECF No. 778.)

27.    On September 13, 2006, petitioner filed a motion to disqualify Bailor and for appointment of new counsel. (ECF No. 782.) In the motion, petitioner argued he was denied effective assistance of counsel because Bailor failed to seek a plea agreement from the government on petitioner's behalf and that he was "woefully uninformed of [e]nhancement of penalty if found guilty of more than one count" and that he was not "advised of true consequences and risks of going to trial." (Id.)

28.    On September 18, 2006, Bailor filed a motion for leave to withdraw as counsel for petitioner. (ECF No. 784.) In the motion, Bailor wrote, among other things:

> On September 13, 2006, Defendant Daniel Keith Matthews filed a pro se motion ***containing allegations of fact which the undersigned denies in their entirety***.
>
> …
>
> Nonetheless it is clear that the attorney-client relationship is irretrievably broken and the undersigned cannot function as Mr. Mathews' attorney.

(Id.)

29.     On September 20, 2006, the court granted petitioner's motion to disqualify counsel and to appoint new counsel and Bailor's motion for leave to withdraw as counsel.[7] (ECF No. 787.)

30.     On October 2, 2005, Frick was appointed as petitioner's counsel. (ECF No. 797.)

31.     Frick did not receive petitioner's case file from Bailor when she was appointed as his counsel. (H.T. 12/18/12 (ECF No. 1067) at 75.) There was no one to compile Bailor's files at that time because Bailor was unavailable due to illness. (Id.)

32.     In preparing for petitioner's sentencing hearing, petitioner had "difficulty the entire time grasping the fact that there was a mandatory minimum and that there wasn't something that we could do to get underneath the ten-year mandatory minimum." (H.T. 12/18/12 (ECF No. 1067) at 78.) Frick explained that petitioner did not know what a § 851 information was and that she had to explain it to him. (Id. at 79.)

33.     Petitioner told Frick he thought his conviction was improper because he was not a member of the conspiracy. (Id. at 80.)

34.     On January 17, 2007, petitioner was sentenced to a term of imprisonment of 120 months at each of counts one and sixteen of the superseding indictment to be concurrently

---

[7] The court did not make any findings about the allegations of ineffectiveness of counsel asserted by petitioner in his motion to disqualify Bailor. The breakdown of communications between petitioner and Bailor was the basis for the court's decision.

served. (ECF No. 878.) One hundred and twenty months was the mandatory minimum term of imprisonment to be imposed in light of the § 851 information filed by the government. See 21 U.S.C. § 841(b)(1)(B)(i).

35.     On appeal to the Third Circuit Court of Appeals, Frick, with petitioner's input, argued there was insufficient evidence to convict petitioner of membership in the conspiracy. (Id. at 77.)

36.     Prior to petitioner's evidentiary hearing with respect to his § 2255 motion, Bailor passed away. (H.T. 12/18/12 (ECF No. 1067) at 67-68, 74.)

## IV.     Conclusions of Law

1.     To support a claim that "counsel's assistance was so defective as to require reversal of a conviction," Strickland, 466 U.S. at 687, petitioner must make two showings. "[A] habeas petitioner claiming a deprivation of his or her Sixth Amendment right to effective assistance of counsel must show that: (1) counsel's performance was deficient; and (2) counsel's deficient performance caused the petitioner prejudice." Ross v. Dist. Att'y of the Cnty. of Allegheny, 672 F.3d 198, 210 (3d Cir. 2012) (citing Strickland, 466 U.S. at 687).

2.     At the evidentiary hearing held on December 18, 2012, the court found that Bailor's performance was deficient under Strickland by reason of petitioner's testimony which could not be contradicted by Bailor who had died. Petitioner testified that Bailor failed to inform petitioner about the implications of the government's filing of a § 851 information and with respect to there being an opportunity to have plea negotiations with the government.[8] (H.T.

---

[8] The court's determination that Bailor failed to advise petitioner of plea negotiation opportunities with the government is called into question by Bailor's motion for leave to withdraw as counsel in which she denied petitioner's allegations of fact in his motion to disqualify her as counsel. (ECF No. 784.) The allegations of fact that Bailor denied include,

12/18/12 (ECF No. 1067) at 99, 101.) The issue presently before the court, therefore, is whether petitioner was prejudiced by Bailor's deficient performance.

3.      "With respect to prejudice, a challenger must demonstrate 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" Id.

4.      Petitioner argues that he was prejudiced because but-for Bailor's deficient performance, he would have pleaded guilty, not gone to trial, and been sentenced to a five-year instead of a ten-year term of imprisonment.

---

among others, that petitioner told her to seek a plea agreement on his behalf, she failed to seek a plea agreement on his behalf, failed to inform petitioner of the risks of going to trial, and insisted she could win petitioner's case. (ECF No. 782.) Bailor's denial that petitioner requested that she seek a plea agreement on his behalf and that she failed to do so is in opposition to petitioner's testimony at the evidentiary hearing held with respect to his § 2255 motion and supports Rivetti's testimony that Bailor told him petitioner was adamant that he was not guilty and wanted to go to trial. The parties, however, did not point to Bailor's motion for leave to withdraw as counsel in their § 2255 briefing, during the evidentiary hearing with respect to the issue presently before the court, or in their supplemental briefs on the same issue. For the purposes of this memorandum opinion, the court will assume Bailor's representation of petitioner was deficient under Strickland and will consider whether petitioner was prejudiced by Bailor's assumed deficiencies.

As discussed above, a petitioner must prove deficient representation and prejudice to be entitled to relief under Strickland. Strickland, 466 U.S. at 687, 694. As both of these components must be demonstrated to support a claim of ineffective assistance, the absence of one negates the need to address the other, and the prejudice prong may be addressed first without the need to decide whether a defense counsel's performance was deficient. Id. at 697 ("If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.") If prejudice is not shown, the court would not have to consider whether Bailor's representation of petitioner was deficient.

5.      In Lafler v. Cooper, 132 S.Ct. 1376, 1385 (2012), the Supreme Court of the United States held that when a defendant asserts he or she was prejudiced by pleading not guilty and having to stand trial due to his counsel's ineffective assistance, he or she

> must show that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court ( i.e., ***that the defendant would have accepted the plea*** and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed.

Id. accord Wheeler v. Rozum, 410 F. App'x 453, 458 (3d Cir. 2010); United States v. Day, 969 F.2d 39, 45 (3d Cir. 1992); United States ex rel. Caurso v. Zelinsky, 689 F.2d 435, 444 (3d Cir. 1982); see also Paez-Ortiz v. United States, 200 F. App'x 946, 947-48 (11th Cir. 2006) (per curiam) ("Where a defendant challenges a not-guilty plea based on ineffective assistance of counsel, he 'must show that there is a reasonable probability that but for counsel's errors, he would have pleaded guilty and would not have insisted on going to trial.'").

6.      As instructed by Lafler, the court must decide, among other things, whether petitioner met his burden to prove that there is a reasonable probability that but-for Bailor's deficiencies, he would have pleaded guilty to the charges contained in the superseding indictment.

7.      Petitioner argues that the disparity in sentences alone, i.e., a mandatory five-year term of imprisonment without the § 851 information versus a mandatory ten-year term of imprisonment with the § 851 information, supports a finding of prejudice in this case under Strickland.

8.      In United States v. Nigro, 419 F. App'x 244, 247 (3d Cir. 2011), the Third Circuit Court of Appeals noted that "'a defendant has the right to make a reasonably informed decision

whether to accept a plea offer,' and that '[k]nowledge of the comparative sentence exposure between standing trial and accepting a plea offer will often be crucial to the decision whether to plead guilty.'" Nigro, 419 F. App'x at 247 (quoting Day, 969 F.2d at 43). The court in Nigro acknowledged, however, that a court may find prejudice was not shown based upon the determination that a petitioner's testimony – that but-for counsel's errors he would have pleaded guilty – was not credible. Id. at 248.

9.      Here, the government argues that the disparity in sentences is not by itself sufficient to support a finding that there is a reasonable probability that petitioner would have pleaded guilty but-for Bailor's deficiencies. The government argues that throughout pretrial proceedings, both jury trials, his post-trial motions, and the evidentiary hearing held on December 18, 2012, petitioner professed he was not guilty of the conspiracy charged in the superseding indictment. The government argues that in light of petitioner's consistent protestations of innocence, the court cannot find there is a reasonable probability that even if petitioner knew about the opportunity to enter into a plea agreement with the government and the possibility and consequences of the government filing a § 851 information, he would have pleaded guilty to the charges against him.

10.      As the court noted at the December 18, 2012 hearing, petitioner contends that he was not a part of the conspiracy charged in the superseding indictment. Petitioner conceded that he told Bailor he was innocent of the charges filed against him in this case. Petitioner twice fervently testified in opposition to the charges against him. If petitioner's testimony at both jury trials that he received a package from Good and after opening it used some of the heroin in the package and that Sloan and Good did not engage in drug transactions at his house had been

credited by the jury, he could have been acquitted.[9] In other words, his testimony was consistent

with his plea of not guilty and contradicted by the evidence of guilt adduced by the government.

Although as counsel for petitioner noted at the December 18, 2012 hearing, petitioner never

testified that he was innocent of all crimes, his testimony supported his belief that he was not

guilty of the crimes charged against him in the superseding indictment. In petitioner's post-trial

motions and his appeal to the Third Circuit Court of Appeals, he argued the government did not

present evidence sufficient for a reasonable jury to convict him beyond a reasonable doubt.

Consistent with his testimony and submissions to the court, petitioner told Frick that he was not a

member of the conspiracy charged in the superseding indictment.

      11.    Under these circumstances, defendant failed to make a showing that there is a

reasonable probability that but-for Bailor's ineffective assistance, he would have pleaded guilty

to the charges against him in the superseding indictment. The court does not find petitioner's

---

[9] To the extent that petitioner's testimony from both jury trials could be characterized as establishing a mere buyer-seller relationship with Good, that testimony, if believed by the jury, would be sufficient to acquit him. In the court's final charge at the conclusion of the second trial, it instructed the jury:

> A simple buyer/seller relationship, without any prior or contemporaneous understanding beyond the sales agreement itself, is insufficient to establish that the buyer was a member of the seller's conspiracy. If the only agreement that the Government has proven involving a Defendant is that he agreed to buy heroin or crack cocaine from Michael Good, even if there is evidence that the Defendant intended to distribute the drug to others, then the Government has failed to prove that the Defendant was a member of the charged conspiracy.

(T.T. 2/21/13 (ECF No. 803) at 34); see United States v. Gibbs, 190 F.3d 188, 198 (3d Cir. 1999) ("It is well-settled that a simple buyer-seller relationship, without any prior or contemporaneous understanding beyond the sales agreement itself, is insufficient to establish that the buyer was a member of the seller's conspiracy.").

testimony that but-for Bailor's errors he would have pleaded guilty credible in light of his testimony and filings throughout the proceedings before this court, which evidence his intent not to plead guilty to the charges against him.  Petitioner has never admitted that he agreed with the testimony of Good and Sloan. In other words, petitioner still continues to assert he is not guilty.

12.      As discussed above, petitioner asserts that despite arguing that he is not guilty of the conspiracy charged in the indictment, he met his burden to show there is a reasonable probability that he would have pleaded guilty because if Bailor negotiated a plea agreement with the government on his behalf, the government would not have filed a § 851 information, and he would have received the five-year mandatory minimum term of imprisonment instead of a ten-year mandatory minimum term of imprisonment. Petitioner cites three decisions in support of this argument: Lafler, United States v. Otero, 502 F.3d 331, 337 (3d Cir. 2007), and Sawyer v. United States, Nos. 11-1224 and 08-271, 2011 WL 6318029 (M.D. Fla. Dec. 15, 2011). These decisions, however, are distinguishable from the present case.

13.      In Lafler, Cooper was charged under Michigan law with "assault with intent to murder, possession of a firearm by a felon, possession of a firearm in the commission of a felony, misdemeanor possession of marijuana, and for being a habitual offender." Lafler, 132 S.Ct. at 1383. The government twice in that case "offered to dismiss two of the charges and to recommend a sentence of 51 to 85 months for the other two, in exchange for a guilty plea." Id. The Court noted that "[i]n communication with the court [Cooper] admitted guilt and expressed a willingness to accept the offer." Id. Cooper rejected both government offers because his counsel told him the government would be unable to prove intent to murder because Cooper shot his victim below the waist. Id. On the first day of trial, the government offered Cooper a "significantly less favorable plea deal." Lafler, 132 S.Ct. at 1383. Cooper again rejected the

government's plea offer and proceeded to trial. Id. The jury convicted Cooper on all counts. Id.
At sentencing, Cooper received a mandatory minimum term of imprisonment of 185 to 360
months.  Id.

14.     The Court of Appeals for the Sixth Circuit found that Cooper's counsel was
deficient and that Cooper was prejudiced because he "'lost out on an opportunity to plead guilty
and receive the lower sentence that was offered to him.'" Lafler, 132 S.Ct. at 1384 (quoting
Cooper v. Lafler, 376 F. App'x 563, 573 (6th Cir. 2010)). On appeal to the Supreme Court of the
United States, the issue before the Court was "how to apply Strickland's prejudice test where
ineffective assistance results in a rejection of the plea offer and the defendant is convicted at the
ensuing trial." Id. at 1384.

15.     As discussed above, the Court held that where a defendant argues that his
counsel's deficient representation caused him to reject a plea offer, to prove prejudice under
Strickland, he or she must show that there is a reasonable probability that:

(1) he or she would have accepted the plea;
(2) the prosecution would not have withdrawn it in light of intervening circumstances;
(3) the court would have accepted its terms;
(4) the conviction or sentence would have been less severe than under the judgment and
    sentence that in fact were imposed.

Lafler, 132 S.Ct. at 1385.

16.     The Court found Cooper was prejudiced by his counsel's deficient representation
during the plea bargaining process, explaining:

> In the instant case respondent went to trial rather than accept a plea deal, and it is
> conceded this was the result of ineffective assistance during the plea negotiation
> process. Respondent received a more severe sentence at trial, one 3 1/2 times
> more severe than he likely would have received by pleading guilty. Far from
> curing the error, the trial caused the injury from the error. Even if the trial itself is
> free from constitutional flaw, the defendant who goes to trial instead of taking a

more favorable plea may be prejudiced from either a conviction on more serious counts or the imposition of a more severe sentence.

Lafler, 132 S.Ct. 1386.

17.     Petitioner cites Lafler in support of his position that the difference in the sentence he received, i.e., a ten-year term of imprisonment, and the sentence he would have received had he entered into a plea agreement with the government that prohibited the government from filing a § 851 information, i.e., a five-year term of imprisonment, supports a finding that he was prejudiced by Bailor's deficient representation. Lafler and the present case, however, are distinguishable.

18.     In Lafler, the Court noted that prior to going to trial, Cooper acknowledged his guilt and willingness to accept the government's plea offers in communications to the court. The Court, therefore, did not need to consider whether Cooper would have accepted the plea agreement and pleaded guilty under the facts presented by that case. Here, however, prior to trial, during both jury trials, and in post-trial proceedings, petitioner testified contrary to the government's witnesses and argued he is not guilty of the crimes charged in the superseding indictment. The court must consider whether petitioner met his burden to show that there is a reasonable probability that he would have accepted a plea offer if presented by the government. In light of petitioner's continual protestations that he was not guilty of the crimes charged in the superseding indictment, the court cannot find that petitioner would have pleaded guilty and accepted any plea offer made by the government.

19.     In Otero, the Third Circuit Court of Appeals concluded that the trial counsel's representation of Demetrio Otero ("Otero") was deficient for failing to object to a 16-level enhancement in his presentence investigation report and that he was prejudiced by the error.

25

Otero, 502 F.3d at 336, 337. The court noted that "[p]rejudice is established when, but for counsel's error, there was a **reasonable probability** that the outcome of the proceeding would have been different." Id. at 337 (emphasis added). The court explained:

> The prejudice prong is satisfied "when a deficiency by counsel resulted in a specific, demonstrable enhancement in sentencing-such as an automatic increase for a 'career' offender or an enhancement for use of a handgun during a felony-which would not have occurred but for counsel's error."

(Id.) (quoting United States v. Franks, 230 F.3d 811, 815 (5th Cir. 2000)). Petitioner argues that Otero stands for the proposition that "[a]n increased sentence that is tied to trial counsel's deficient performance constitutes prejudice." (ECF No. 1063 at 2.) This reading of Otero is too narrow. Otero does not stand for the proposition that provided that a significantly more favorable outcome is *possible*, the court must find a petitioner was prejudiced by his counsel's deficient representation. As the court in Otero acknowledged, there must be a "reasonable probability" that the more favorable outcome would have occurred. Otero, 502 F.3d at 337. Petitioner's reading of the Otero ignores the reasonable probability standard. In that case, the court found that the case law supported an argument that the 16-level enhancement was improper and that if counsel would have raised and won that argument, Otero's sentencing guideline range would have been significantly less. Id. Under those circumstances, there was a reasonable probability that but-for counsel's error, Otero would have received a more favorable outcome. In this case, petitioner argues he would have received a reduced sentence but-for Bailor's errors. In light of his trial testimony that was contrary to guilt and his continuing protestations of non-guilt, the court does not find his testimony that he would have pleaded guilty to be credible. Accordingly, he did not meet his burden to prove that there is a reasonable probability that but-for Bailor's

errors, he would have pleaded guilty and received a more favorable sentence. Petitioner is, therefore, not entitled to relief.

20.     Petitioner cites <u>Sawyer</u> in support of his position that the disparity in sentences provides a basis for the court to find he was prejudiced by Bailor's ineffective assistance. In <u>Sawyer</u>, the petitioner, Daniel Sawyer ("Sawyer"), argued that his counsel was deficient for failing to advise him about a plea agreement offer. <u>Sawyer</u>, 2011 WL 6318029, at *5. The court agreed with Sawyer and concluded that Sawyer's counsel's representation of him was deficient because he failed to advise Sawyer with respect to "the risks associated with proceeding to trial versus pleading guilty, including the potential § 851 enhancement and the possible sentence."[10] <u>Id.</u> The court credited Sawyer's testimony[11] that had he been properly advised of the risks associated with going to trial, he would have pleaded guilty. <u>Id.</u> The government argued that based upon Sawyer's testimony at the evidentiary hearing that he was not guilty of the conspiracy charged in the indictment, Sawyer would not have pleaded guilty if presented with a plea offer, and, therefore, Sawyer could not show that he was prejudiced by his counsel's ineffectiveness. <u>Id.</u> at *6. The court rejected this argument, finding that Sawyer's testimony with respect to his belief that he was not guilty of the conspiracy was "based upon representations of his former counsel." <u>Id.</u> In moving for a judgment of acquittal, Sawyer's former counsel argued that the government failed to prove that Sawyer was a knowing-member of the charged

---

[10] Similar to the case at hand, Sawyer's trial counsel passed away at some point prior to the evidentiary hearing with respect to his § 2255 motion. <u>Sawyer</u>, 2011 WL 6318029, at *1.

[11] Sawyer's testimony concerning representations made to him by his trial counsel, i.e., that the government did not have a case against him and that he would be going home, was corroborated by the testimony of his sister, Monica Elias, which the court credited. <u>Sawyer</u>, 2011 WL 6318029, at *2-3.

conspiracy. <u>Sawyer</u>, 2011 WL 6318029, at \*6. Sawyer's counsel acknowledged that the government could have charged Sawyer with a number of crimes, including "attempting to purchase cocaine...[and] attempting to traffic in cocaine[,]" but that the evidence presented did not prove beyond a reasonable doubt that he was a member of the conspiracy charged in the indictment. <u>Id.</u> The court found Sawyer's testimony that he was not a member of the conspiracy charged in the indictment was "understandable" in light of his counsel's argument with respect to the judgment of acquittal. <u>Id.</u> In rejecting the government's argument, the court concluded Sawyer was prejudiced by his counsel's deficient representation based upon his testimony that "had he been properly counseled regarding the law of conspiracy and the plea agreement, he would have plead guilty." <u>Id.</u>

21.     Like <u>Lafler</u>, <u>Sawyer</u> is distinguishable from the present case. In <u>Sawyer</u>, the court credited Sawyer's testimony that but-for his counsel's errors, he would have pleaded guilty to the charges against him. <u>Sawyer</u>, 2011 WL 6318029, at \*6. The court acknowledged that Sawyer testified at his trial, but did not describe his testimony or place any emphasis on it. The only evidence of Sawyer professing his non-guilt of the charges against him that was relied on by the government was the testimony he offered at the hearing with respect to his § 2255 motion. <u>Id.</u> In this case, the court finds that petitioner's testimony that he would have pleaded guilty but-for Bailor's ineffective assistance is not credible in light of his fervent testimony at both jury trials which, if believed by the jury, would have been sufficient to acquit him and his continual assertions that he was not guilty of the crimes charged in the superseding indictment before and after both jury trials, on appeal to the court of appeals, and in his § 2255 motion.

22.     During the evidentiary hearing on December 18, 2012, petitioner testified that he told Bailor he was not guilty of the charges in the superseding indictment because he "didn't

really know what a conspiracy was." (H.T. 12/18/12 (ECF No. 1067) at 25.) He explained: "I didn't ask for any drugs. It got dropped off on me. I figured conspiracy was something that you had planned to do. I didn't plan to do that." (Id.) He, however, did not repudiate his trial testimony. He testified that he did not hold drugs for Good to sell to Sloan and did not permit Good and Sloan to engage in drug transactions in his house. The jury, however, credited the testimony of Good and Sloan and found petitioner guilty. Under those circumstances, the court cannot ignore petitioner's testimony which if believed by the jury could have resulted in his acquittal and his consistent protestations that he was not guilty of the crimes charged in the superseding indictment. His testimony at both trials accounts for petitioner maintaining that he was not guilty of the crimes charged in the superseding indictment throughout the appeal process when Frick was his counsel and in his motion to vacate, set aside, or correct sentence by a person in federal custody. Under these circumstances, the court concludes that petitioner failed to make a showing that there is a reasonable probability that, but-for Bailor's errors, he would have pleaded guilty to the charges against him in exchange for a reduced sentence. Petitioner, therefore, failed to show that he was prejudiced by Bailor's deficient performance. Petitioner's motion to vacate, set aside, or correct sentence by a person in federal custody must, therefore, be denied.

## V.  Certificate of Appealability

When a district court issues a final order denying a § 2255 petition, the court must also make a determination concerning whether a certificate of appealability ("COA") should issue or the clerk of the court of appeals shall remand the case to the district court for a prompt determination as to whether a certificate should issue.  See 3rd Cir. LAR. 22.2 (2002).  Based upon the motion and files and records of the case, and for the reasons set forth herein, the court

finds that petitioner has not shown a substantial denial of a constitutional right. Therefore, a COA should not issue.

**VI. Order**

AND NOW, this 12th day of April, 2013, upon consideration of petitioner's motion to vacate, set aside, or correct sentence by a person in federal custody, the government's response in opposition, the evidence presented at the hearing on December 18, 2012, and the supplemental briefs submitted by the parties, IT IS HEREBY ORDERED that petitioner's motion to vacate, set aside, or correct sentence by a person in federal custody pursuant to 28 U.S.C. § (ECF No. 953) is DENIED in its entirety.

IT IS FURTHER ORDERED that no certificate of appealability should issue.

By the court:

/s/ JOY FLOWERS CONTI
Joy Flowers Conti
United States District Judge